NUMBER
13-03-461-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

RUBEN MONTES
MORALES,                                                          Appellant,

                                                             v.

THE STATE OF TEXAS,                                                                    Appellee.

 

 

                    On appeal from the 275th District
Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Castillo and Garza

 

      Opinion by Chief
Justice Valdez

 








Following a bench trial, appellant, Ruben Montes
Morales, was found guilty of capital murder and attempted capital murder;
appellant was sentenced to life imprisonment and fifty years= imprisonment respectively.  Appellant raises two issues on appeal:  (1) the evidence is legally insufficient to
establish the necessary elements of capital murder during the course of
committing or attempting to commit the offense of aggravated kidnapping, and
(2) the evidence is factually insufficient to establish that appellant
committed capital murder during the course of committing or attempting to
commit the offense of aggravated kidnapping. 
We affirm the judgment of the trial court. 

Background

In the early morning hours of June 2, 2002, Saul AMomo@ DeLeon was shot to death in front of his residence
in a mobile home park in Pharr, Texas. 
Cruz Cortez, Momo=s friend, was shot behind his ear, but
survived.  The evening before the
shootings, Momo had hosted a barbecue at his home which was attended by friends
and family.  Among those present were
Momo=s common-law wife, Jennifer DeLeon, and Jennifer=s sister, Norma DeLeon.  After the barbecue concluded, everyone left
except for Momo, Cruz, Jennifer, and Norma. 
Momo and Cruz sat outside in Cruz=s brother=s truck drinking beer and listening to music while
Jennifer and Norma remained inside the trailer with Jennifer=s baby. 
Around midnight, appellant and an unidentified group of men arrived at
Momo=s trailer home and confronted Momo.  Appellant allegedly struck Momo in the head
with a gun and ordered at least two of the unidentified men to remove Cruz from
the truck.  As per appellant=s orders, the men grabbed Cruz, tied him up with
duct tape, and then threw him in the back of the truck.








Norma testified that she heard people arguing and
yelling and looked outside to see what was happening.  She saw appellant and Momo arguing and
quickly woke Jennifer.  Jennifer testified
that she looked outside and witnessed two or three men attempting to throw Momo
in the truck; Momo struggled to resist their attempt.  Norma saw two men in the bed of the truck,
one of them armed, but did not see that they were holding down Cruz.  Jennifer testified that she did see Cruz in
the bed of the truck.  Both Norma and
Jennifer testified that appellant saw them looking through the window and
ordered them to open the door.  When
Norma and Jennifer threatened to call the police, appellant brandished a gun
and allegedly threatened to kill Momo and to hurt them.  Jennifer grabbed her son, and she and Norma
ran into the bathroom to hide.  Cruz was
shot once in the back of the head near his ear. 
Then, gunshots rang out and Momo called out for Jennifer=s help.  A few
minutes later, Jennifer and Norma left the bathroom and saw Momo lying near the
door.  He was bloodied and
semi-conscious.  Although no one who
testified at trial actually witnessed Momo=s shooting, Cruz, Jennifer, and Norma each witnessed
appellant brandish a gun.  Cruz also
heard appellant tell his accomplices that he was going to kill everybody and
take Cruz=s brother=s truck.    

Legal and Factual Sufficiency of the Evidence








In evaluating the legal sufficiency of the evidence,
we view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19 (1979); Cardenas v. State,
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000). 
The legal sufficiency of the evidence is measured by the elements of the
offense as defined by a hypothetically correct jury charge for the case that
would set out the law, be authorized by the indictment, not unnecessarily
increase the State=s burden of proof or unnecessarily restrict the
State=s theories of liability, and adequately describe the
particular offense for which the defendant was tried.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  This standard
applies to both jury and bench trials.  Id.  

In evaluating factual sufficiency of the evidence,
we review the evidence in support of and contrary to the trier of fact's
findings to determine whether the evidence is so weak that it renders the
verdict clearly wrong and manifestly unjust or the verdict is contrary to the
evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1997). 

  Applicable
Law

A person commits capital murder if he commits murder
as defined under section 19.02(b)(1) and intentionally commits the murder in
the course of committing or attempting kidnapping, burglary, etc.  Tex.
Pen. Code Ann. ' 19.03(a)(2) (Vernon 2003).  A person commits murder under section
19.02(b)(1) if he intentionally or knowingly causes the death of an
individual.  Id. ' 19.02(b)(1).

Appellant was specifically charged with committing
capital murder while in the course of committing or attempting to commit
aggravated kidnapping.  A person commits
aggravated kidnapping if he intentionally or knowingly abducts another person
with the intent to (1) hold him for ransom or reward, (2) use him as a shield
or hostage, (3) facilitate the commission of a felony or the flight after the
attempt or commission of a felony, (4) inflict bodily injury on him or violate
or abuse him sexually, (5) terrorize him or a third person, or (6) interfere
with the performance of any governmental or political function.  Id. '
20.04(a)(1)-(6) (Vernon 2003).  A person
also commits aggravated kidnapping if he intentionally or knowingly abducts
another person  and uses or exhibits a
deadly weapon during the commission of the offense.  Id. '
20.04(b).  








A person commits criminal attempt if, with specific
intent to commit an offense, he does an act amounting to more than mere
preparation that tends but fails to effect the commission of the offense
intended.  Id. ' 15.01(a).

Analysis

By his first issue, appellant argues that the
evidence is legally insufficient to establish the necessary elements of capital
murder in the course of committing or attempting to commit the offense of
aggravated kidnapping. 

 By his second
issue, appellant argues that the evidence is factually insufficient to
establish that he committed capital murder during the course of committing or
attempting to commit the offense of aggravated kidnapping.  More specifically, he complains that the
evidence fails to prove beyond a reasonable doubt that he shot and killed Momo
and/or shot and wounded Cruz while in the course of committing or attempting to
kidnap them. 

I. Capital Murder

The evidence adduced at trial establishes that Momo
was gunned down in front of his trailer home. 
He sustained seven gunshot wounds, six of which were from a distance and
the other at close range.  Witness
testimony placed appellant at the scene of the crime with a firearm.  Appellant was observed striking Momo in the
head with the gun, aiming it towards Jennifer and Norma, and threatening to
kill Momo if Jennifer and Norma did not open the trailer door to allow him
entry.  Momo was in close proximity to
appellant as this occurred.  Jennifer and
Norma rejected appellant=s demand and ran to the bathroom to hide.  While running for safety, Norma testified
that she saw Momo run inside and attempt to hold the door shut as if someone
was trying to get in.  Almost immediately
thereafter, gunshots were fired and Momo died as a result of multiple gunshot
wounds.  








The evidence supports the contention that either as
the principal actor or a member of a larger criminal party, appellant
intentionally killed Momo.  The law of
parties allows the State to enlarge a defendant's criminal responsibility for
acts in which he may not be the principal actor.  Goff v. State, 931 S.W.2d 537, 544
(Tex. Crim. App. 1996).  In determining
whether the defendant participated as a party, the court may look to events
occurring before, during, and after the commission of the offense, and may rely
on actions of the defendant which show an understanding and common design to do
the prohibited act.  Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1996). 
Circumstantial evidence may be used to prove party status.  Id. 
Appellant=s apparent authority over his accomplices and the
multitude of gunshots from both close range and beyond reflect that appellant
and his accomplices aided each other in Momo=s
shooting death, and that appellant could properly be charged as a principal or
a party with Momo=s death.            


II. Aggravated Kidnapping

There was sufficient evidence presented at trial to
support the finding that appellant attempted to kidnap Momo and Cruz.  Appellant directed at least two of his
accomplices to (1) tie Cruz=s arms and legs with duct tape, (2) place him on the
back of Cruz=s brother=s truck, and (3) shoot him if he moved.  Also, Cruz heard appellant tell his
accomplices that they were going to take the truck.  Finally, Jennifer saw some of the men attempt
to throw Momo on the truck.  Like Cruz,
Momo had duct tape on his wrist as if someone attempted to tie him up.  Once again, either as the principal actor or
a party member, it is apparent that appellant intended and attempted to kidnap
Momo and Cruz.     








When viewed in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found that
appellant committed capital murder in the course of attempting to kidnap Momo
and Cruz.  See Jackson, 443 U.S.
at 318-19.  We overrule appellant=s first issue.   


Furthermore, we cannot rule that the evidence is so
weak that it renders the verdict clearly wrong and manifestly unjust or that
the verdict is contrary to the evidence. 
See Johnson, 23 S.W.3d at 11; Clewis, 922 S.W.2d at
129.  We also overrule appellant=s second issue.  


Conclusion

We affirm the judgment of the trial court.                                                                               
                                                                         

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

Do not publish.

Tex.
R. App. P. 47.2(b).

 

 

Memorandum
Opinion delivered and filed

this
17th day of November, 2005.