

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00200-CR

_____

ROBERT WAYNE FRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 16,969

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A chair is still a chair, even when there's no one sittin' there
But a chair is not a house and a house is not a home
When there's no one there to hold you tight
And no one there you can kiss goodnight.[1]

Robert Wayne Fry was convicted of burglary of a habitation. On his appeal of that conviction, he argues not that the house he entered is not a habitation but, rather, that the evidence shows that he committed only the burglary of a building and not a habitation. By way of explanation of Fry's complaint, the burglary of a habitation is a second degree felony, but burglary of a simple building is a state jail felony.[2] Since the difference in the penalties for the two different offenses is quite radical, Fry much prefers the structure that he entered unlawfully to be deemed a simple building and not a habitation. Finding the evidence at trial to be sufficient to prove commission of burglary of a habitation, we affirm the trial court's judgment.

Fry does not contest that he entered a building without the effective consent of the owner, Jamie Dippold, or his motive for that entry; he only contests whether that building fits the definition of a habitation. Dippold testified that about two years before the January 2, 2015, incident at issue, she and her husband bought the farmhouse in question, which is situated on property adjacent to land already owned by Dippold. An elderly woman had been living in the farmhouse until she passed away. After the demise of the woman, a caretaker lived in the house until Dippold's purchase of it. Dippold continued to live in another residence in a different part

---

[1]LUTHER VANDROSS, *A House is Not a Home*, *on* ALWAYS & FOREVER: THE CLASSICS (Epic 1981).

[2]*See* TEX. PENAL CODE ANN. § 30.02(c) (West 2011).

of Gladewater.  On January 2, 2015, a neighbor called to say she had seen someone entering Dippold's farmhouse.  This caused Dippold and her son-in-law, Christopher Shelton, to go to the farmhouse; Shelton caught Fry running out of the house.  Shelton, armed with a forty-caliber pistol, detained Fry until deputies arrived.

An Upshur County jury convicted Fry of second degree felony burglary of a habitation. On appeal, Fry's only complaint is that he maintains that the evidence at most supports a conviction for burglary of a building, a state jail felony.[3]

**Burglary of What?**

The Texas Penal Code defines habitation as "a structure or vehicle that is adapted for the overnight accommodation of persons . . . ."  TEX. PENAL CODE ANN. § 28.01(1) (West 2011).  The Texas Court of Criminal Appeals analyzed what would constitute a habitation in *Blankenship v. State*, 780 S.W.2d 198 (Tex. Crim. App. 1988) (op. on reh'g).

> What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination.  Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer).  All of these factors are relevant; none are essential or necessarily dispositive.

---

[3]Fry's brief describes his complaint as a fatal variance between the indictment's allegation and the proof actually rendered at trial.  This is effectively an attack upon the sufficiency of the evidence.  Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Id*. The evidence is sufficient where, the cumulative evidence viewed in the light most favorable to the jury's verdict, could have allowed any rational jury to find the elements of the charged offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

3

*Id.* at 209. The residence in *Blankenship* was a rent house which had not been "lived in or leased for about two years at the time of the burglary." Although the house was wired for electricity, at the time the burglary occurred there was no meter on site and the electrical power was neither connected nor turned on. Similarly, although it was capable of being supplied with water service, the water service to the house was "turned off at the back yard." *Id.* at 206. The court also took into consideration that the residence had, at one time, been lived in by the owner-complainant, that it had two window air conditioners fully installed, that it was only about 300 yards from the complainant's current residence, that it was located along the only driveway providing access to the complainant's residence, and that it was then being used to store some of the complainant's household items. *Id.* at 210. Finally, the owner himself "testified that the structure was adapted for the overnight accommodation of persons." *Id.* These facts would allow a reasonable fact-finder to make a finding that the building in question was a habitation; in other words, the structure was "adapted for the overnight accommodation of persons."[4]

Fry points to testimony that at the time of the burglary, neither gas, nor electricity, nor water services were actually connected to the house, and there was no furniture in the house. However, the State provided the evidence that the prior owner of the house had lived in it until her death and, according to Dippold, the house "had been occupied in the past for a long period of time." Subsequent to the death of the prior owner, the house was occupied (sans any utility service, using the existing fireplace as a source of heat) in pretty much the same condition as the house

---

[4]TEX. PENAL CODE ANN. § 30.01 (West 2011).

existed when Fry entered it.  The farmhouse entered by Fry bears much in common with the house at issue in *Blankenship*.  Both the house in Fry's case and the house in *Blankenship* had been vacant about two years.  Neither the house entered by Fry nor the house in *Blankenship* was being supplied with any utility service at the time of entry, even though both were equipped to be connected to utility providers.  The house that Fry entered had been regularly occupied as a residence until it was purchased by Dippold (an event occurring about two years before the burglary).

The instruction provided to the jury gave the following pertinent definition:

"HABITATION" MEANS A STRUCTURE OR VEHICLE THAT IS ADAPTED FOR THE OVERNIGHT ACCOMMODATION OF PERSONS, AND INCLUDES EACH SEPARATELY SECURED OR OCCUPIED PORTION OF THE STRUCTURE OR VEHICLE AND EACH STRUCTURE APPURTENANT TO OR CONNECTED WITH THE STRUCTURE OR VEHICLE.

There was sufficient evidence presented upon which a rational jury could well have found that the house entered by Fry "was probably intended to accommodate persons overnight."  *Id.* at 209.

We affirm the judgment.


Bailey C. Moseley
Justice

Date Submitted:      June 7, 2016
Date Decided:        June 24, 2016

Do Not Publish

5