

# NUMBER 13-21-00059-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MONICA MEZA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

## On appeal from the 28th District Court
of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

Appellant Monica Meza appeals from a judgment convicting her of burglary of a habitation with the intent to commit a felony other than theft, a first-degree felony, *see* TEX. PENAL CODE ANN. § 30.02(a), (d), and cruelty to non-livestock animals, a third-degree felony. *See id.* § 42.092(b)(1), (c-1). Following a bench trial, the trial court found Meza guilty and sentenced her to concurrent prison terms of five years and two years,

respectively. In one issue, Meza argues there is legally insufficient evidence supporting her conviction for cruelty to non-livestock animals. We affirm.

## I.     BACKGROUND

A grand jury returned an indictment charging Meza with intentionally or knowingly entering the habitation of Patricia Silva without her consent and committing, or attempting to commit, the offense of aggravated assault with a deadly weapon. *See id.* § 30.02(a), (d). The indictment further charged Meza with intentionally, knowingly, or recklessly killing an animal in a cruel manner, "namely a dog by beating the dog with a stick." *See id.* § 42.092(b)(1), (c-1). Meza waived her right to a jury trial, and the case was tried before the bench.

At trial, Silva testified that she was making lunch at her home in Corpus Christi, Texas, when she heard her dogs barking in her enclosed front yard. Silva went to the front door and saw an unknown woman, identified as Meza at trial, standing outside. Silva asked Meza if she could help her, and Meza yelled that her son was in Silva's house. Silva responded that Meza's son was not in her house, and Meza then started throwing bricks at Silva's car. Silva went outside and told Meza to stop, and Meza started hitting Silva with a pipe. Next, Meza pushed past Silva and entered her house, while yelling that she was looking for her son. When Meza exited the residence, she continued to hit Silva with the pipe. Meza later went to a neighbor's house and proceeded to break the windows of a car.

Meanwhile, Silva's dogs escaped their enclosure. Meza killed one of the dogs by hitting it with the pipe. Meza then reapproached Silva, who picked up a wooden staff to

defend herself. However, Meza wrestled the staff away and struck Silva in the back of the head. Silva stated that she went to the hospital to receive treatment for her injuries, which included lacerations and a concussion.

Officer Andrew Argais with the Corpus Christi Police Department (CCPD) was dispatched to Silva's residence. Upon his arrival, Officer Argais learned from Silva's neighbor that a woman, later identified as Meza, was beating a dog with a stick. Officer Argais then spoke to Silva who stated that Meza entered her home and assaulted her. Officer Argais observed that Silva had a laceration on her right ring finger, a "busted" lip, and a bump on her forehead. Officer Argais discovered a deceased dog near the residence. He took photographs of the dog and Silva's injuries, which the trial court admitted into evidence.[1]

CCPD Officer Rodriguez[2] also responded to the scene. Officer Rodriguez located Meza at a nearby residence. His conversation with Meza was recorded by another officer's body camera, and the trial court admitted the video into evidence. During their conversation, Meza told Officer Rodriguez that she recently used methamphetamine. Officer Rodriquez stated that Meza was hallucinating, had rambling speech, and was sweating profusely.

Meza testified that she was staying with an acquaintance down the street from Silva's house. Meza did not know Silva, but she knew Silva's brother. Meza maintained that she went to Silva's house to ask if she had seen Meza's son. On the day of the

---

[1] The trial court also admitted a competency evaluation, in which a court-appointed psychologist determined that Meza was competent to stand trial.

[2] Officer Rodriguez's full name does not appear in the record.

3

incident, Meza claimed to be dehydrated, "under starvation mode," and suffering from various medical issues. Meza denied that she was under the influence of any drugs, although she claimed that she was prescribed methamphetamine. Meza admitted that the assault occurred as described by Silva, but Meza denied killing Silva's dog. Meza claimed that two people removed a dead dog from a car and placed it on the street.

The trial court found Meza guilty of both offenses, and, after hearing punishment evidence, it sentenced Meza to five years' imprisonment for burglary of a habitation, *see id.* § 30.02(a), (d), and two years' imprisonment for cruelty to non-livestock animals. *See id.* § 42.092(b)(1), (c-1). This appeal followed.

## II.    LEGAL SUFFICIENCY

In her sole issue, Meza argues her conviction for cruelty to non-livestock animals is not supported by legally sufficient evidence.

### A.    Standard of Review & Applicable Law

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

4

We measure the legal sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240).

A hypothetically correct jury charge in this case would require the State to prove that: (1) Meza; (2) intentionally, knowingly, or recklessly; (3) killed an animal in a cruel manner;[3] and (4) Meza's conduct was not a generally accepted and otherwise lawful form of conduct occurring solely for the purposes of or in support of fishing, hunting, trapping, wildlife management, wildlife or depredation control, shooting preserve practices, animal husbandry, or agriculture practice involving livestock animals. *See* TEX. PENAL CODE ANN. § 42.092(b)(1), (c-1), (f).

## B.    Analysis

Meza challenges only whether there was legally sufficient evidence that she killed Silva's dog. Meza argues that Silva's testimony was controverted by her own, and therefore the State was required to present further corroborating evidence. We disagree with Meza on two fronts.

---

[3] A person may also commit an offense if the person "intentionally, knowingly, or recklessly . . . without the owner's effective consent, kills . . . an animal[.]" TEX. PENAL CODE ANN. § 42.092(b)(2). The indictment did not charge Meza with violating this subsection of the statute.

5

First, except for circumstances not applicable here,[4] there is no requirement that the State present evidence corroborating a witness's testimony. Rather, the testimony of a single eyewitness to an offense may constitute legally sufficient evidence. *Jackson v. State*, 530 S.W.3d 738, 742 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Second, Silva's testimony that Meza killed her dog was corroborated by Officer Argais's testimony that a neighbor witnessed Meza beating a dog with a stick. Officer Argais took a photograph of a deceased dog at the scene, which the trial court admitted into evidence. *See State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016) (explaining that when required, corroborating evidence need not corroborate each element of the offense or each aspect of a witness's testimony). Finally, under a legal sufficiency review, it matters not that Meza's testimony contradicted Silva's. "When, as here, the testimony of the State's witnesses conflicts with the testimony of the defendant's witnesses, the [fact finder] may believe all, part, or none of any witness's testimony." *Caminorreal v. State*, 374 S.W.3d 479, 483 (Tex. App.—Corpus Christi–Edinburg 2012, no pet.).

We must presume that the trial court, as the finder of fact, found credible Silva's testimony that she witnessed Meza kill her dog. *See Brooks*, 323 S.W.3d at 899. Accordingly, we conclude that Silva's eyewitness testimony constitutes legally sufficient evidence establishing this fact. *See Jackson*, 530 S.W.3d at 742. Because Meza does not challenge the other elements of the offense, we overrule her sole issue.

---

[4] For instance, the State is required to present evidence corroborating the testimony of an informant or an accomplice. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.14 (accomplice testimony), 38.141 (informant testimony).

### III.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
31st day of March, 2022.

7