

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WENDALL D. JONES, | § | No. 08-23-00197-CR |
| Appellant, | § | Appeal from the |
| v. | § | 226th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021-CR-2720) |

## MEMORANDUM OPINION[1]

A jury convicted Appellant Wendall D. Jones of sexual assault of a child and indecent exposure with a child. [2] As limited by the indictment, both charges required proof of prohibited conduct against "a child younger than 17 years of age." In his sole issue on appeal, Jones maintains the trial court erred by submitting a jury instruction permitting a conviction as to each charge on a factually impossible date, and without the jury considering whether the victim was a child younger than 17 years of age. For the reasons that follow, we affirm.

---

[1] We hear this case on transfer from the Fourth Court of Appeals in San Antonio and apply that court's precedent as required by TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE ANN. §§ 21.11(A), 22.011(a)(2)(B).

## BACKGROUND

Because Jones does not challenge the sufficiency of the evidence supporting his convictions, we provide only a brief recitation of the facts presented in the light most favorable to the verdict. *See Banda v. State*, 768 S.W.2d 294 (Tex. Crim. App. 1989) (en banc) (stating "a brief recitation of the facts in the light most favorable to the verdict is useful" even where the appellant does not bring a sufficiency challenge). On March 24, 2021, Jones was charged by indictment with one count of sexual assault of a child younger than 17 years of age (Count I); and one count of indecent exposure with a child younger than 17 years of age (Count II). Jones entered a plea of not guilty, and the case proceeded to a jury trial.

The evidence at trial established that, on or about July 4, 2020, at approximately 4:00 or 5:00 a.m., V.C.,[3] who was then 16 years old (and turning 17 in September), was standing on the side of a south San Antonio street holding up her thumb to hitchhike a ride. V.C. had been staying with friends after she had left her mother's home days earlier. But her friends had asked her to leave. At that early hour, she was walking on the street, trying to get to either her mother's house or to her cousin's.

A man, who was later identified as Jones, pulled over in a car. After V.C. got into the vehicle, Jones said to her, "Damn, you have some nice lips." Feeling concerned, V.C. asked for a ride to her cousin's apartment. If anything happened, she decided it would be harder for him to track her in her cousin's apartment complex. By her thinking, Jones would be unable to find her after he dropped her off. When Jones asked her for her name and age, she responded with a nickname and told him she was 16 years old. En route, Jones told her he needed to make a stop

---

[3] We use initials to protect the anonymity of the complaining witness who was a minor at the time the offense was committed. *See* TEX. R. APP. P. 9.10(a)(3).

and get something from his apartment. When they arrived, Jones told her to "[g]et off the car." She took this to mean he wanted her to exit the car and go in with him.

Although V.C. only wanted to go home, she followed as instructed. She testified to the jury that she was too scared to run, and she felt intimidated by his size. She followed him to his apartment. Looking around, even though it was half-lit, she saw there was a belt on the sofa and a knife on a table. She described that Jones started talking to her in suggestive terms. As V.C. sat on the sofa, Jones stood in front of her rubbing his genitals from the outside of his clothing. When asked what happened next, she testified: "He touches my–he tells me to just do oral for a little bit." She then described that, as he put his hand on her head, he pulled down his pants. Then he pulled down his boxers and exposed his genitals. She testified that, once he moved closer to her face, he put his penis in her mouth. Minutes later, after he had ejaculated on her jacket, he asked if she wanted oral sex from him. V.C. told him she liked girls only. When asked whether she tried to fight back or escape, she answered that she had been raped earlier that year, and she felt intimidated. She believed if she obeyed Jones, it would be over sooner.

Jones next drove V.C. to her cousin's place. After two days, V.C. told her mother about what had happened to her. V.C. described that her mother reacted ugly towards her. After V.C. started breaking glasses, her mother called the police on her. Once officers arrived, V.C. reported the incident involving Jones. The officers then took her to a hospital. Samples were collected from her jacket and clothing. She was also examined by a sexual abuse nurse examiner (SANE). At trial, the SANE report and DNA test results were admitted into evidence. The forensic analyst testified that Jones could not be excluded as a source of the human DNA found on samples taken from a cutting of V.C.'s clothing.

In his own defense, Jones testified that he stopped to help V.C. when he saw her hitchhiking. Although he denied he told V.C. she had nice lips, he admitted he flirted during their conversation. He testified that he was "hitting on her to see if [he] could get her to go back to [his] place," and she agreed to go to his apartment. Jones next described that V.C. asked him what he wanted to do. She then said, "I get the money up front." Jones testified he never performed any sexual act on V.C., but instead, she grabbed his penis and placed it in her mouth. He claimed he did not force her or offer her anything, but he never stopped her from putting his penis in her mouth. Jones acknowledged that he ejaculated on V.C.'s clothing. Afterwards, they left his apartment and he drove her to where she had earlier requested. While they rode in his car, Jones testified that V.C. asked him about his work and whether he had a lot of money. Jones responded, "I didn't pick you up for that." When they arrived where she had wanted to go, she said: "I wasn't trying to get all your money. I just didn't have sex with you because I'm 16." Jones claimed that he responded, "You're 16, get out." Jones claimed that moment is how he found out her age.

After deliberating, the jury found Jones guilty on both counts as charged. Jones was sentenced to eight years confinement for Count I and two years confinement for Count II. The trial court ordered the sentences to run concurrently and placed Jones on community supervision for ten years. This appeal followed.

## STANDARD OF REVIEW

Claims of jury charge error are reviewed under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g). First, a reviewing court must determine if charge error exists. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc)). Second, if error is found, then a harm analysis must follow. *Id*. If there was a timely objection, the record

4

need only show "some harm" to justify reversal of the conviction. *Id*. (citing *Almanza*, 686 S.W.2d at 171). In this context, "some harm" means "actual harm and not merely a theoretical complaint." *Id*. Applying that standard, "the reviewing court considers the error in light of four factors: (1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments, and (4) if applicable, any other relevant information as revealed by the record as a whole." *Id*. (citing *Almanza*, 686 S.W.2d at 171). Neither party bears the burden to show harm. *Id*. "Ultimately, reversal is required if the error was calculated to injure the rights of the defendant." *Id*. However, if no objection was lodged, as in this case, we review the unpreserved error for egregious harm. *Almanza*, 686 S.W.2d. at 171. Egregious harm means actual harm, rather than theoretical harm, and must be of such a nature that it affected the very basis of the case, deprived the accused of a fair and impartial trial, or otherwise vitally affected the accused's defensive theory at trial. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

## THE JURY INSTRUCTION

On appeal, Jones contends that "[p]age 33 of the [j]ury [i]nstructions at the guilt-innocence phase . . . unlawfully permitted the jury to convict [him] for an offense outside the limiting time parameter in the indictment[.]" The instruction he points to, in relevant part, reads as follows:

> Our law provides that the time of the offense alleged in the indictment must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation. The phrase "on or about" means that the State is not required to prove that the alleged offense happened on that exact date.

> There is no limitation period for the offense of sexual assault of a child and indecency with a child by exposure. Therefore, it is sufficient if the State proves that the offense alleged was committed some time before March 24, 2021, which is the date the indictment was filed.

As to this instruction, Jones advances a series of arguments. First, he claims it "mistakenly allows the jury to find an offense even after the complainant's SANE examination," and such a date would be factually impossible. He points out that no record evidence demonstrated that V.C. ever returned to his apartment after she had made an outcry that led to her receiving a SANE examination on July 6, 2020. Second, he urges the instruction does not correspond to either the allegations of the indictment or the proof at trial. On this score, he points out the indictment alleged a date "on or about" July 3, 2020, and the proof at trial, excluding the State's investigation, only spanned a time frame of events occurring from July 3, 2020, to July 4, 2020. Last, he contends the challenged instruction was erroneous and egregiously harmful to the extent it allowed the jury to convict him for offenses occurring on a date anywhere between July 3, 2020, and March 24, 2021. Most concerning, he points out that on March 24, 2021, V.C. was not younger than 17 years of age. In short, he argues the instruction allowed the jury "to perceive sexually offensive behavior by the Appellant beyond the facts, beyond the statute requiring proof that the complainant was younger than 17 years of age, and beyond the possibility[.]"

Because Jones did not object to the challenged portion of the jury charge, we agree with him but only to the limited extent he correctly describes that any charge error is subject to the egregious harm standard set forth by *Almanza*. *See Almanza*, 686 S.W.2d at 171. However, assuming without deciding that error was shown, we otherwise reject Jones's claim that egregious harm was shown by the challenged instruction itself.

Essentially, Jones argues the instruction permitted the jury to convict him of offenses that occurred even after a date that would be factually impossible and not aligned with the proof at trial. In support, he relies on *Jones v. State*, 815 S.W.2d 667 (Tex. Crim. App. 1991) (en banc) (per curiam), a case requiring that a jury charge "correspond to both the allegations and the proof."

6

However, we reject his contention as *Jones* was overruled by *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). In *Malik*, the Court noted that *Jones* and other cases of a line of decisions had all misinterpreted federal constitutional precedents by holding that evidence sufficiency would be measured by the jury charge that is given even when it is more favorable than the law requires if the State fails to object. *Id*. at 235. Instead, *Malik* clarified that the sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See id*. at 240. A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

As relevant here, the offenses of sexual assault of a child and indecency with a child include limiting provisions. Sexual assault of a "child," provides the offense is committed "regardless of whether the person knows the age of the child at the time of the offense," but the offense defines the term "child" as meaning "a person younger than 17 years of age." *See* TEX. PENAL CODE ANN. §§ 22.011(a)(2)(B), (c)(1). As charged in this case, indecency with a child limits the offense to "a child younger than 17 years of age." *See* TEX. PENAL CODE ANN. §§ 21.11(a)(2)(A). Also of note, neither of these offenses have a statute of limitations. *See* TEX. CODE CRIM. PRO. ANN. art. 12.01(1)(B), (E). The two-count indictment alleged that Jones had committed the offenses against V.C. "on or about the 3rd Day of July, 2020." To be clear, "[t] is well settled that the on or about language of [a charging instrument] allows the state to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period." *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PRO. ANN. art. 21.02(6) ("The time mentioned must be some date anterior to the

presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.").

Viewing the jury charge as a whole, the trial court instructed the jury that the offenses of sexual assault of a child and indecency with a child both applied to "a person younger than 17 years of age." Moreover, the application paragraph for the charge of sexual assault required the jury to find from the evidence and beyond a reasonable doubt that, on or about the 3rd day of July 2020, in Bexar County, Texas, that Jones did intentionally or knowingly cause the penetration of the mouth of V.C., "a child who was younger than 17 years of age and not the spouse of Wendell Jones, by Wendell Jones's sexual organ." Similarly, for the charge of indecency with a child, the application paragraph required the jury to find from the evidence and beyond a reasonable doubt that, on or about the 3rd day of July 2020, in Bexar County, Texas, that Jones did, with the intent to arouse or gratify the sexual desire of any person, expose part of his genitals, "knowing that [V.C.], a female child younger than seventeen (17) years, was present." To this extent, no egregious harm is shown when the jury charge is examined in its entirety. *See Almanza*, 686 S.W.2d at 171.

Although Jones claims the charge permitted the jury to find him guilty of offenses on a date inconsistent with the evidence, his argument is not supported by this record. Rather, V.C. and Jones both testified to a sexual encounter occurring between them on July 4, 2020. Undisputed evidence established that V.C. was younger than 17 years on that date. Other evidence also pointed to the same date. For example, the SANE examiner testified about an examination performed on July 6, 2020, based on V.C.'s outcry that an assault occurred days earlier. Thus, as relevant to these offenses, even though the State is permitted to prove a date other than the one alleged as long as it is anterior to the presentment of the indictment, the evidence here all supports the assault occurring

8

on or about July 4, 2020. *See Wright*, 28 S.W.3d at 532. Thus, there is no record evidence supporting Jones's argument that the challenged instruction permitted the jury to find the sexual assault occurred after V.C. turned 17 years old. For these reasons, we conclude that no egregious harm is shown by the challenged instruction itself. Accordingly, Jones's sole issue is overruled.

## CONCLUSION

We affirm the trial court's judgements of conviction.


GINA M. PALAFOX, Justice


February 13, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

9